CITY OF TRENTON, Defendant in Error, v. J. M. HUMEL, Plaintiff in Error.

**Kansas City Court of Appeals, December 7, 1908.**

1. **BENEFIT SOCIETIES: Old Line Insurance: Distinction: Contract.** Whether a fraternal benefit association is prosecuting a life insurance business must be determined by the contract it makes and not by the name of the association.

2. ———: ———: ———: **License: Agent.** The National Annuity Association of Kansas City is held on the agreed statement of facts to have been prosecuting in plaintiff city a life insurance business through the defendant as its agent, and the latter was liable to punishment unless. licensed by the city.

3. ———: ———: **License: Taxation: Exemption.** *Held*, further, that section 1408, Revised Statutes 1899, did not exempt the defendant agent from paying the license tax to the plaintiff city, since an exemption from any legitimate branch of taxation is a privilege of such a high order and is so rarely granted that it is never inferred but requires express provision, placing the intention beyond reasonable doubt; and the phrase "corporate or other tax" will not include license.

Error to Grundy Circuit Court.—*Hon. George W. Wanamaker*, Judge.

AFFIRMED.

*D. C. Finley* for plaintiff in error.

(1) A fraternal beneficial association is not an insurance company. Theobald v. Supreme Lodge, 59 Mo. App. 87; Baltzell v. Modern Woodmen, 98 Mo. App. 153; Morton v. Royal Tribe of Joseph, 93 Mo. App. 78; Herzberg v. Modern Woodmen, 110 Mo. App. 328;

Westerman v. Supreme Lodge K. P., 196 Mo. 670; Commonwealth v. Beneficial Assn., 137 Pa. St. 412; Masonic Aid Assn. v. Jones, 154 Pa. St. 99; Dickinson v. A. O. U. W., 159 Pa. St. 258; Knights Templar and Masons Life Indemnity Co. v. Berry, 50 Fed. 511; Baltzell v. Modern Woodmen, 98 Mo. App. 153. (2) The Legislature has not conferred on cities of the third class authority to impose a license tax on fraternal beneficial associations or their deputies. R. S. 1899, sec. 5857. Municipalities can only exercise such powers of taxation as are clearly conferred upon them by legislative act; such powers cannot be extended by construction, and the language of the act conferring the power must be strictly construed. Kansas City v. Thompson, 19 Mo. App. 523; 25 Am. and Eng. Ency. of Law, 482; St. Louis v. Laughlin, 40 Mo. 559; Cooley on Municipal Taxation (2 Ed.), page 574. (3) A license is a tax for the purpose of a revenue. St. Joe v. Ernst, 95 Mo. 360; Kansas City v. Grush, 151 Mo. 128. (4) If a doubt exists as to the right to tax the right does not exist. St. Louis v. Bell Tel. Co., 96 Mo. 623.

*H. J. Bain* for defendant in error.

(1) The occupation defendant was engaged in, in the city of Trenton was that of soliciting persons to take out what was called benefit certificates or insurance policies in his fraternal insurance order. The calling of an insurance contract fraternal beneficial or any other similar name does not make it any the less life insurance or remove the defendant from the operation of the ordinance. Logan v. Fidelity and Casualty Co., 146 Mo. 125; Herberg v. Brotherhood, 110 Mo. App. 329; Aloe v. Mutual Life Association, 164 Mo. 675; Baltzell v. Modern Woodmen, 98 Mo. App. 153. (2) It is not what a company calls itself that determines the kind of business it is engaged in,

it is the manner in which it conducts its business and the contract which it enters into, that determines whether it is in the insurance business, or not. State ex rel. v. Merchants' Exchange Society, 72 Mo. 146; Baltzell v. Modern Woodmen, 98 Mo. App. 153. (3) The Legislature has delegated to the city through its charter the authority to levy an occupation tax upon all persons soliciting insurance operating within the city limits. R. S. 1899, sec. 5857. The ordinance follows the statute and is leveled against the occupation. Revised Ordinances of 1905, sec. 357. (4)    A plain distinction exists between a tax and a license. State v. Bixman, 162 Mo. 30; Harkreader v. Turnpike Co., 101 Tenn. 680, 49 S. W. 751; Railroad v. Harris, 99 Tenn. 684, 43 S. W. 115; Commonwealth v. Ellis, 33 N. E. 651; Provident Institution v. Mass., 6 Wall. (U. S.) 611; Savings Society v. Coit, 6 Wall. (U. S.) 594; 21 Am. and Eng. Ency. Law (2 Ed.), 816: (5) Laws exempting persons or property from taxation are to be strictly construed, and the claimant of such an exemption must establish his right beyond a reasonable doubt. Fitterer v. Crawford, 157 Mo. 51; Washington University v. Rowse, 42 Mo. 308; St. Louis v. Ins. and Trust Co., 47 Mo. 150; Driving Park v. Kansas City, 174 Mo. 425.

ELLISON, J.—The defendant was convicted of carrying on the business or avocation of an agent for life insurance within the limits of the city of Trenton, without having a license therefor, as required by an ordinance of that city. He was convicted in the trial court and a fine of ten dollars imposed.

His claim in defense is that he was an agent for the "National Annuity Association of Kansas City, Missouri," and that such association is organized under article 11, chapter 12 of the Statutes of Missouri for 1899, providing for the organization of "Fraternal Beneficial Associations;" that as such, it was not a life in-

surance company and that in acting as its agent, he was not a life insurance agent. His further claim is that as a fraternal benefit society it was exempt from taxation.

In determining whether a fraternal benefit association is or is not prosecuting a life insurance business, we are not concluded by its name. Whether they are engaged in life insurance depends upon the nature of the contracts they make in the special instance where they make claim to exemption from the burdens of life insurance companies. [McDonald v. Insurance Co., 154 Mo. 618; Westerman v. Supreme Lodge, 196 Mo. 670, 741; Logan v. Fidelity Co., 146 Mo. 115; State ex rel. v. Merchants Exchange, 72 Mo. 146; Herzberg v. Brotherhood, 110 Mo. App. 329.]

In this case it is agreed that "defendant was engaged in the occupation and business of working for said association for compensation in the city of Trenton, Missouri. Said occupation and business being to solicit persons to join and become members of a local order in Trenton, which was a part of the National Annuity Association aforesaid, the object of said association being to confer and bestow certain benefits upon its members upon the payment of stipulated sums therefor and also to maintain its organization in the form of a fraternal order. Said benefits being the nature of old age benefits, funeral benefits, and death benefits, more particularly set forth in the pamphlet or prospectus of said association hereto attached and marked Exhibit 'A.' "

The exhibit thus referred to sets forth that the association wrote "Annuity certificates of *life insurance* to its members in amounts from $1,000 to $4,000 and pays its benefits in equal quarterly payments covering a period of ten years." It further set forth that a permanent "reserve" was set apart and that a "level rate of assessment was maintained." The rate is then set forth in detail. It is then provided:

"*Funeral Benefits.*—All certificates issued by the National Annuity Association maturing by death entitle the beneficiary of the deceased to an immediate relief payment of one hundred dollars in cash.

"*Permanent Disability Benefits.*—We pay one-half the face of your certificate, in quarterly payments of annuity, for the loss of one hand or one foot, and the full face of your certificate, in quarterly payments, for the loss of both hands, both feet, or one hand and one foot, or the complete and permanent loss of both eyes, or permanent total disability from any other cause.

"*Old Age Benefits.*—All beneficiary members in good standing are entitled to full benefits, in quarterly payments, on account of physical disability after the age of seventy years.

"We protect you while you live, and provide a substantial support to your family after your death."

Throughout the lengthy detail of this exhibit the insurance is referred to as "life insurance," as the following illustrates:

"*Whole Life Certificate.*—The plan of life *insurance* written by the National Annuity is founded upon adequate-rates. Our tables of rates have all been compiled by competent actuaries, and are mathematically correct, and each the equivalent of the other."

The premiums, or payments, are referred to as "level payments."

In our opinion this company was conducting through defendant, as its agent, a life insurance business. The assumption of a fraternal name cannot be allowed to give immunity as against the patent fact, no more than can an evasion be allowed to defeat the end of any other law.

But it is suggested that even though this association was prosecuting a life insurance business through defendant as its agent, yet that was merely a result from its contracts made and solicited in the city of

Trenton and that the association was nevertheless a fraternal benefit association under the statute aforesaid. And that, as such character of association, it was exempt from taxation under the express direction of the statute (Section 1408). The language of that statute is that "Such associations shall be governed by this act and shall be exempt from the provisions of the insurance laws of this State, and shall not pay a corporation or other tax, and no law hereafter passed shall apply to them unless they be expressly designated therein."

The question thus presented is, does that statute exempt defendant from the duty of taking out a license as required by the ordinance of the city? We think it does not. Exemption from any legitimate branch of taxation is a privilege of such high order and is so rarely granted that it is never inferred; there must be express provision to that effect, placing the intention beyond reasonable doubt. [Fitterer v. Crawford, 157 Mo. 51; Exposition Park v. Kansas City, 174 Mo. 425; Washington University v. Rowse, 42 Mo. 308.] In a learned opinion by the Supreme Court of Tennessee, an exemption of a railroad corporation from taxation on dividends, the roads and fixtures, depots, workshops, warehouses, and vehicles of transportation, was held not to be an exemption on the "privilege" of operating the road. [Railroad v. Harris, 99 Tenn. 684; 43 S. W. 115.]

Under the rule thus announced in our Supreme Court, and in the case last cited in which an array of authorities are gathered, we conclude that the exemption from "corporation or other tax" does not include an exemption from the payment of a license to solicit and procure life insurance. For, license, in its proper sense, is a term distinct from taxation (State v. Bixman, 162 Mo. 1, 30, 31), and an exemption from one does not include an exemption from the other. Borrowing the idea from a suggestion in Railroad v. Harris, supra, the exemption from taxation no more includes an exemption

from a license, than the imposition of a license would include general taxation. "If one imposition does not embrace both, one exemption does not embrace both."

It follows from the foregoing that the trial court took the correct view of the law and the judgment will be affirmed. All concur.